WALTER MARSHALL SPINNING CORPORATION OF RHODE ISLAND *vs.* JOSEPHINE MEROLA.

JANUARY 26, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a petition for review of a preliminary agreement in a workmen's compensation case on the ground that the employee's incapacity for work has ended or diminished. The case is here on respondent's appeal from the final decree of the superior court finding that she had recovered from her injury, was no longer incapacitated, and was not entitled to further compensation.

Respondent contends that the trial justice misconceived or failed to consider evidence of her mental and physical

condition at the time of the trial. She further argues that there is no legal evidence to support the findings in the decree. In short, her position is that petitioner's evidence of her mental and physical condition some six months or more prior to the trial is of no probative value on the issue of her condition at the time of the trial. She insists that her testimony and that of Dr. Louis J. Cella and Dr. Thomas L. Greason who examined and treated her a short time before the trial is the only legal evidence on this point.

The evidence shows that respondent was employed as a spinner in petitioner's mill and that while leaving her place of employment on October 11, 1949 she slipped and fell on some cement stairs and struck the back of her head; also that in attempting to get up she fell a second time and again bumped her head. She testified that as a result of her fall she was "really out," "saw nothing but darkness" and had "a lump on my head."

On October 12, 1949 she was examined by Dr. Cella who found that she had sustained the following injuries: Injury to the muscles of the upper and lower back, bone bruise and contusion left shin bone, bone bruise left knee, torn ligament in the left knee, and contusion and redness in the back of the head. He also testified that respondent complained of severe headaches and nervous shock.

Doctor G. Edward Crane, an orthopedist, examined her for the petitioner on October 17, 1949 and from an orthopedic viewpoint he found her normal at that time. She complained to him of dizziness, headache and pain in her neck between her shoulders. As to her being unable to work he testified that he felt at that time it could only be due to her subjective complaints and for that reason recommended an examination by Dr. Wilfred Pickles, a neurosurgeon, to rule out any injury to her head.

Respondent was not examined at that time by Dr. Pickles nor did Dr. Crane examine her again after October 17, 1949. Instead the parties entered into an agreement on October 21, 1949 to the effect that respondent "slipped and fell

on stairs," that such accident arose out of and in the course of her employment, and that she thereby sustained the following injuries: "contusion of head, strain of back, bruise left knee and shin bone." The parties further agreed therein that as a result of such injuries respondent was totally incapacitated for work and that petitioner was to pay her compensation therefor at the rate of $25.92 per week for the "duration of total incapacity." This agreement was approved by the director of labor on November 7, 1949.

After the agreement had become effective, petitioner had the respondent examined by Dr. Pickles. He first saw her on November 7, 1949, observed her again on November 15 and completed his examination on November 20, 1949. He gave her a complete physical and neurological examination and reported that from the history which she gave him she had some congestion of the brain after the accident, but that at the time of his examination there was no residual injury to her brain or skull, and no injury to the cervical spine or spinal cord. The only injuries he found were some aggravation of a pre-existing osteoarthritic condition and some strain of the neck muscles. He further reported on December 14, 1949, upon inquiry by the petitioner, that the condition of respondent which he found on November 20, 1949 was not such as, in his opinion, would prevent her from returning to work.

Accordingly on January 1, 1950 petitioner filed in the office of the director of labor the instant petition for review. After a hearing the director found respondent no longer totally incapacitated but still partially incapacitated and awarded her partial compensation. Both parties appealed from that decision to the superior court and the cause was heard there on May 22, 1950. In the meantime Dr. Cella, who had been treating respondent for the injuries which he had found, examined her again on February 3, 1950 and as a result of her continued complaints of headaches and

dizziness referred her to Dr. Thomas L. Greason, a specialist in nervous and mental disorders.

At the hearing in the superior court Dr. Cella and Dr. Greason testified for the respondent and Dr. Crane and Dr. Pickles testified for the petitioner. Those doctors were more or less in agreement that respondent was no longer totally incapacitated. Doctors Cella and Greason felt that her condition warranted her doing light work but they were positive that she should not return to her former occupation. Doctor Cella testified that she could do light work not involving "any stretching of those neck muscles and no pulling and where there isn't much noise—none at all, in fact."

Doctor Greason testified that she could do limited work requiring no bending or lifting. As a result of his examination of respondent and from the history which she gave him he felt that she was suffering from a posttraumatic cerebral syndrome related to her injury. He testified that he had been treating her for that ailment from the date of his examination to the time of the trial and was of the opinion that there was some improvement in her condition. He further testified that if she was not required to return to her former employment there was a reasonable prospect of continued improvement. He admitted that her complaints were almost entirely subjective, but also stated that they were nevertheless real and serious and required careful and patient treatment.

Doctor Crane admitted that respondent's subjective complaints were not in his field and for that reason had recommended an examination by a neurosurgeon as far as complaints of her head injuries were concerned. Except for those complaints he felt that respondent was normal orthopedically and in that respect could return to work. Doctor Pickles was positive that when he examined respondent on November 20, 1949 she did not have a posttraumatic cerebral syndrome, which he testified was evidence of a neurosis aggravated by an injury. He further testified

that such an aggravated neurosis was not a mental disorder but a disturbance of the personality for which no organic cause could be found. He admitted on cross-examination, however, that symptoms of a syndrome related to her injury could develop after he examined respondent and that they may develop several months after an injury although they usually come fairly soon thereafter. He was positive that such symptoms were not present when he saw her and in his opinion she did not then show "any residual evidence of a *head injury*." (italics ours) In answer to a hypothetical question comprehending all the subjective complaints which respondent gave to Dr. Greason when he examined her later in February 1950 he, Dr. Pickles, stated that in his opinion for such a case of aggravated neurosis, as he termed it, or a traumatic syndrome as it was otherwise called, work was the best possible treatment. In other words, the inference from such testimony is that even if respondent had a traumatic cerebral syndrome she was not incapacitated and for her own welfare should return to work.

As we view the evidence there is no conflict on the question whether respondent had a traumatic cerebral syndrome at the time of the hearing in the superior court. The only credible evidence on this point is that of Dr. Greason. That she did not have it in November 1949 according to the uncontradicted testimony of Dr. Pickles is of no consequence in view of his admission that it could have manifested itself after he had examined her. There was, therefore, no legal evidence to support the finding in the decree that respondent had recovered from her injury.

However, it does not necessarily follow that because she has not fully recovered respondent is still totally incapacitated for work. Whether the traumatic syndrome which ails her now is of sufficient severity to prevent her from returning to her occupation as a spinner in petitioner's mill is the real question to be determined. Concerning this matter we have the definite opinions of Doctors Cella

and Greason. Each testified specifically that she was not able to do such work, but both agreed that she was able to do light work involving no bending or lifting and where there is not much, if any, noise.

On this point Dr. Pickles was not specific. When asked what kind of work a person with an aggravated neurosis could do he answered: "Well, work which the patient can and will do." And to the next question "Job as spinner?" he replied: "Well, there again you have got to answer specific questions about specific patients. If the patient complains of dizziness, for example, you cannot put the patient to work where, if she were dizzy, it would be dangerous to herself or to her fellow workers. You couldn't put a man who complained of dizziness up on a staging. You have to fit your treatment to the patient."

Doctor Pickles did not testify specifically that respondent was capable of doing her regular work nor is such a conclusion clearly inferable from his testimony. On the contrary it is a reasonable inference therefrom that she should return to work only if it was not dangerous to her and her fellow workers considering her condition as assumed in the hypothetical question propounded to him, which among other things included respondent's complaints of dizziness especially when bending or stooping. No one else testified that respondent could do her regular work. The petitioner, being the party seeking to disturb a preliminary agreement in which it had acknowledged respondent's total incapacity, had the burden of presenting some evidence that she was capable of working at her job as a spinner if it expected to prove that her total incapacity had ended and not merely diminished. Clearly it did not do so.

On our view of the evidence there is no support for the findings in the decree that respondent is no longer incapacitated and is not entitled to further compensation. There is, however, uncontradicted evidence that she can do light work of a limited nature. She is, therefore, no longer *totally* incapacitated. For that reason the agreement

should be modified to provide for compensation for partial incapacity. Such partial compensation should be fixed at the maximum allowed by the workmen's compensation act, general laws 1938, chapter 300, article II, §11, as amended, at least until there is available to her from petitioner or otherwise light work which she can do and at which she can earn wages that will furnish the basis for a precise computation of such compensation in accordance with the provisions of the act.

Petitioner in its brief and oral argument relied on *Grieco v. American Silk Spinning Co.*, 75 R. I. 356, as a precedent in support of the decree in the case at bar because in many respects the two cases were quite similar. We do not agree. In our opinion they are readily distinguishable in that the petitioner in the *Grieco* case was the employee who was seeking to show that she had received a compensable injury, whereas in the case at bar the preliminary agreement admits such an injury and the petitioner is the employer who is seeking to show that the injury is no longer incapacitating. Furthermore there was no objective evidence of trauma in that case while in the instant case there is uncontradicted evidence of trauma and the agreement also admits it.

The respondent's appeal is sustained, the decree appealed from is reversed, and on February 2, 1951 the parties may present for our approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Worrell & Hodge, Lee A. Worrell,* for petitioner.

*M. Louis Abedon,* for respondent.