ATLAS TOOL & FINDINGS CO., INC. *vs.* MARION DUFFY.

AUGUST 7, 1953.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J.   This is an employer's petition under the workmen's compensation act, general laws 1938, chapter 300, for review of a preliminary agreement entered into by the parties and approved by the director of labor.   Following a hearing in the superior court a decree was entered in favor of the petitioner and from the entry of that decree respondent, hereinafter referred to as the employee, duly prosecuted her appeal to this court.

The agreement which was dated September 4, 1951 contained statements that the employee was injured by accident February 16, 1951 while working for petitioner and that she had caught her finger in a foot press, resulting in a fracture of the distal and middle phalanges of her left middle finger.   The agreement also provided that she be paid compensation for the duration of her total incapacity at the rate of $19.20 per week based on an average weekly wage of $30.   The evidence showed that the employee had done

piecework for the petitioner as a foot press operator making hinges for only two days prior to her accident, although she had previously been employed elsewhere; that she was right handed; and that she had done no work since she was injured. The petitioner sought to show that the employee's incapacity had entirely terminated or at least had materially diminished.

The pertinent part of the decree appealed from is as follows:

"1. There is available to respondent, in common with others, a variety of types of work in the laundry business, including sorting, marking, drying, restoring, packing, and folding, at a minimum wage of $28.00 per week on the basis of a forty-hour week.

2. There is available to respondent work in the restaurant business as a counter girl and as a floor waitress at a minimum wage of $25.00 per week plus gratuities, which would equal at least $28.00 per week.

3. Respondent is able to perform in both the laundry field and in the restaurant business work of a type where she could earn at least $28.00 per week, which sum is the dollar value of her weekly earning capacity.

4. Respondent is no longer totally incapacitated for work.

5. Respondent, at the present time, is only partially incapacitated for work.

6. The position the respondent held at the time of the accident no longer exists.

7. The court finds, at the specific request of the respondent, that the work offered at the trial to the respondent by the petitioner, involving the putting of two small pieces of metal together in a jig to form a hinge, is beyond the capacity presently to be expected of the respondent.

It is, therefore,

Ordered, Adjudged and Decreed:

1. Payments of compensation for total incapacity may be suspended.

2. The employee shall assume the status of partial incapacity and shall be paid a weekly compensation

equal to 60 per cent of the difference between her average weekly wages prior to the accident and $28.00 per week."

The first question to be considered is whether there was legal evidence to support the findings of fact contained in the decree. Doctor Edmund B. Curran, a surgeon who had examined the employee on September 19, 1951 and also partially at the time of the hearing, testified in substance that she had restricted motion in the left middle and index fingers, the first joint being about 60 per cent normal and the distal joint 20 or 30 per cent normal; that there was also on the tip of the middle finger a sensitive spot which would disappear after a time; and that motion in the meta-carpal phalangeal joints was about normal. It was his opinion that the employee could do the work she had been doing at the time of the accident and could also act as waitress and work in a laundry. It appeared in evidence that she had previously been employed in such jobs and had worked in a candy factory.

Doctor William A. Horan, who had attended the employee for about a year prior to the hearing in the superior court, testified that there had been a fracture of the middle finger but not of the index finger; that he had treated her for injury to her whole left hand, and in particular for a stiff-ness of the two fingers; and that such treatments included the use of whirlpool baths, multiple stretchings under anaesthesia, physiotherapy and similar treatments. In his opinion her hand had improved and she had obtained better than 75 per cent function thereof. However, he further testified in substance that while the employee should go to work, she was still disabled to some extent and could not take a job in which she had to use particularly the two injured fingers of her left hand, and that she should not work around machines immediately as that might be danger-ous to her and others. In his judgment the question was to find the proper type of work for the employee and he mentioned among other things acting as inspector in plants,

operating an elevator, restaurant work, subject to some limitations, and some types of employment in cleansing establishments.

It appears from the evidence that the job the employee was performing when injured cannot be offered her because an automatic press is now being used to do that work. Further at the time of the trial petitioner had no other position open for her because of slack business. However, it was stated that as soon as business picked up a job somewhat similar to the one she was doing when injured would be available for her.

Upon consideration of the testimony we are of the opinion that there was legal evidence, direct and by reasonable inference, to support the findings of fact numbered 4, 5, 6 and 7 in the decree. That being the case, in accordance with the provisions of G. L. 1938, chap. 300, art. III, §6, and the decisions thereunder, in the absence of fraud such findings are conclusive. As the result of these findings it was established that the employee was no longer totally incapacitated but was thereafter only partially incapacitated.

However, in our judgment the trial justice in the circumstances acted prematurely in immediately attempting to fix the dollar value of the employee's earning capacity in accordance with the power given him under G. L. 1938, chap. 300, art. II, §11, as amended by public laws 1950, chap. 2628. While the employee remained totally incapacitated she was under no legal duty to attempt to obtain work. After it had been determined that she was able to do some work and therefore was only partially incapacitated her status changed. Clearly chapter 2628 would not become applicable at once unless the employee had been offered and had refused a position which under the evidence she was able to perform. This had not occurred.

In this case the petitioner presented two witnesses, one of whom was secretary of the Launderers & Cleansers Association of Rhode Island, and the other the executive secretary of the Rhode Island Restaurant Association, and

Rhode Island Hotel Association. In substance they testified that both laundries and restaurants were in need of employees to do work such as respondent could perform and that the weekly wage in such employments would amount to a definite sum according to a scale of wages which was given.

However, petitioner offered no such work and no definite or firm offer of a specific job in any particular place was made to the employee under the above testimony. It could easily be possible that such a prospective employer might have need and opportunity for workers generally but might still refuse to hire petitioner because of the condition of her left hand. In our judgment the above testimony is helpful in pointing out where petitioner might look for and possibly obtain work but it falls short of an actual offer which would provide her with a job she could perform so that her partial earning capacity might be definitely fixed.

Without passing at this time in any way upon the correctness of the findings of fact numbered 1, 2 and 3 in the decree appealed from, it is our opinion that they should be stricken therefrom as being prematurely made at the present stage of the proceedings between these parties. However, it is clear that in view of the fact that the employee is now only partially incapacitated it is her duty to cooperate in good faith in an attempt to obtain work which the evidence in the case indicates she can properly do. In that regard she is not in a position to remain inactive. If the employer offers her such work or if she herself is able to find it she should reasonably attempt to perform it. If that situation develops and she is still entitled because of lessened earning capacity to some payment by way of compensation the amount thereof is fixed by statute and it will not be necessary to ask the superior court to function under P. L. 1950, chap. 2628. But if the employee is not cooperative in that respect and fails to look for a position suitable to her physical condition or does not accept one if it is offered to her by the employer or another, then she runs the risk of having,

at the employer's request, her compensation suspended entirely or of having the superior court exercise its power under chapter 2628 in fixing the dollar value of her weekly earning capacity.

The employee, however, argues further that the trial justice was in error on two occasions in permitting over her objection certain testimony to be introduced by the petitioner. We have examined the rulings in question and find that in the circumstances the trial justice was not in error and the employee takes nothing by such exceptions.

Contending that the testimony of Dr. Edmund B. Curran was improperly admitted as being based on an examination made too long before the superior court hearing, the employee cites the case of *Marshall Spinning Corp. of Rhode Island* v. *Merola,* 78 R. I. 20. It is clear that such case is not controlling here since the holding therein was based on an entirely different set of facts. In that case a head injury was involved and there was medical evidence that at the time of the trial the employee was suffering from a post-traumatic cerebral syndrome. This court ruled in substance that the testimony of a doctor, who had made an earlier examination and who had testified that in his opinion there was no traumatic cerebral syndrome present at that time, did not constitute legal evidence to support a finding of the trial justice that presently the employee had fully recovered, especially as the doctor himself testified that such a condition might have developed after his examination. In the instant case the employee's injury is simple and definite and there is no question of such a later development. The only question raised relates to the extent of her recovery.

The employee also urges that certain testimony was admitted during her cross-examination regarding the nature and source of a portion of her income. In this connection she calls our attention to the provisions of G. L. 1938, chap. 300, art. II, §14, which provides that benefits from any other source than the employer shall not be considered in

fixing compensation. It is clear from the transcript that the trial justice did not admit the evidence objected to by the employee for the purpose of aiding him in fixing the amount of compensation under the act and the evidence was not so used. It was permitted solely as bearing on the question of whether in the circumstances the employee had an incentive to seek a job and to work, and as showing her general economic situation. In our opinion the employee was not prejudiced by the ruling of the trial justice in this respect which was not contrary to the provisions of the above-mentioned statute.

In addition the employee argues that she comes under the rule applying to "odd lot" employees so called as set out in *Lupoli* v. *Atlantic Tubing Co.*, 43 R. I. 299. Because of the disposition we are making of the instant appeal we deem it unnecessary to discuss at this time whether the above rule applies to the employee. Finally in view of the existing circumstances we see no merit in the employee's contention that the petition should have been dismissed at the time of the trial because petitioner had allegedly violated the preliminary agreement by being late in its payments of compensation.

It is our conclusion therefore that the decree appealed from should be modified by striking therefrom findings of fact numbered 1, 2 and 3. Further, after the statement in paragraph numbered 2 of the order to the effect that the employee is partially incapacitated, it should be provided that in the circumstances she be paid compensation by the employer at the rate of $18 per week, being the maximum amount for partial incapacity, for such reasonable time as the superior court may determine in order to allow her an opportunity to obtain, or others to offer, work suitable to her present capabilities as disclosed by the evidence herein. At the conclusion of the time so fixed by the superior court either party may request that court, after notice and hearing, to make such further order or decree conformable to law as in its judgment will in the then existing circum-

stances be fair and equitable and do substantial justice between the parties under the act.

The respondent's appeal is sustained in part, the decree appealed from is modified as indicated, and the cause is remanded to the superior court for the entry of a decree in accordance with this opinion.

### ON MOTION FOR REARGUMENT.

#### AUGUST 21, 1953.

PER CURIAM. After our decision in the above cause the respondent asked and received permission to file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the cause. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

O'CONNELL, J., did not participate in decision on motion for reargument.

*Carroll & Dwyer, Edward F. J. Dwyer,* for petitioner.

*Goldberg & Goldberg, Philip B. Goldberg, Raymond A. LaFazia,* for respondent.