INTERLAKEN MILLS (HARRIS) *et al. vs.* KATHLEEN POLING.

FEBRUARY 12, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J.  This is an employer's petition to review a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300.  After a hearing in the superior court, a justice thereof entered a decree granting the petition and suspending further payments of compensation.  From the entry of that decree the respondent has duly appealed to this court.

The injury to respondent, which arose out of and in the course of her employment with petitioner, is described in the agreement as a clean transverse fracture of the tibia and fibula an inch above the site of an old fracture.  It is agreed by the parties that the only issue before us is whether the finding of the trial justice in the decree, "That the respondent is no longer incapacitated for work by reason of the injury set out in the agreement sought to be reviewed," is supported by any legal evidence.

The respondent, who was employed as secretary to the superintendent of petitioner's mill, on September 10, 1948 while at work bumped against a desk, lost her balance, twisted her right leg, and in regaining her balance suffered the injury complained of.  Thereafter she was treated at the Rhode Island Hospital by Dr. G. Edward Crane.  However, the fractured bones in her lower right leg did not knit well and on two occasions grafting operations were performed by the doctor.  These were not entirely satisfactory and in

January 1951 another and more successful grafting operation was performed on her leg by a specialist in a Boston hospital. In January 1952 he fitted her with a brace to support her right ankle. Most of the time she wears this brace, which is attached to her right shoe and reaches to below the knee.

The respondent returned to her former position with petitioner in October 1950 and while still being treated by Dr. Crane worked off and on until December of that year. She left at that time claiming that she could not do the walking required of her. There was evidence that the offices where she worked were so arranged that the secretary was compelled to do considerable walking in order to perform her duties. Except for the above months, respondent has not worked since her accident and has been receiving compensation for total disability. It also appeared in evidence that her position with petitioner is not now open.

At the time of the hearing in the superior court she was about thirty-six years of age, without dependents, and lived alone in a small apartment in the town of West Warwick. The only witnesses were herself and Dr. Ernest Thompson. In addition, two exhibits were introduced by petitioner. The respondent testified in substance that after standing fifteen or twenty minutes her right leg pains her and she has to lean on something; that the leg hurts when she puts weight on it; and that in spite of the brace her ankle sometimes turns. She stated that she desired to work but would prefer doing it at home and she expressed some doubt whether she could with regularity travel from her apartment to a place of employment. She testified that she took a commercial course in high school, and that in her position she did shorthand, typing and filing, and performed the duties of a secretary. It also appeared in evidence that she was nervous, having had high blood pressure since 1946, a condition which was not connected with the accident to her leg.

At the hearing in the superior court, which began November 18, 1952, Dr. Thompson testified that he had examined respondent the previous December and she described the pain and weakness in the region of her right ankle. Based on such examination he gave the following opinion as to her condition: "Q. Now, did you have any feeling as to whether or not, with the wearing of the brace, she would be able to return to work? A. It was my impression that this subject worked as an office worker or secretary, and it was my impression that she should be able to carry out work which did not require long hours of standing, or walking, namely, clerical or sedentary work such as typing or secretarial work. And because of the nature of the duties that I understood that were required of her and because of the situation found present at the right ankle, it was my reaction that she should be able to return to her regular duties without unusual difficulty. Q. Now, doctor, did your examination disclose any evidence that would make it advisable for her to return to work such as work you have just described? A. No. * * *. Q. Would it be a fair statement, therefore, doctor, that—assume nothing unusual has happened during the past year then that you would feel that today, as of a year ago, she should be able to return to her regular duties as a clerk or stenographer, performing sedentary work. A. It was my feeling at the time that after a few weeks of wearing the brace that she should acquire confidence in the right ankle and she should be able to return to the type of work described."

At the conclusion of Dr. Thompson's testimony, the trial justice indicated that he believed respondent should again be examined by Dr. Thompson and Dr. Crane as impartial examiners, and that further X rays should be taken. For that purpose he continued the hearing and on January 26, 1953 a joint report of the two doctors was presented. It contained the following conclusions: "This patient is, in our opinion, not totally disabled, at this time, because of

the status at the right lower leg. Her regular occupation is that of office clerk or secretary and we understand that she does stenographic work. It is our opinion that this patient is able, at this time, to carry out duties such as are ordinarily required of an office secretary, stenographer, or office clerk, providing that her duties do not require long periods of standing or walking long distances at the site of employment. * * * It is our opinion that if this patient was satisfactorily outfitted with proper brace, she could carry out office work satisfactorily. It is our opinion that no further surgery should be contemplated and that the present status of the right lower leg is satisfactory and sufficient." No further medical evidence was presented.

In his rescript the trial justice stated that from the oral testimony and the joint report of the two doctors he was satisfied that respondent could carry out duties such as are ordinarily required of an office secretary provided she did not have to stand long periods of time or walk long distances at her place of employment. He thereupon made the finding of fact in the decree to the effect that respondent was no longer incapacitated for work by reason of the injury described in the preliminary agreement. Upon consideration of the entire record, we are of the opinion that the trial justice erred, since there was no legal evidence which expressly or by reasonable inference supported the finding that respondent was no longer incapacitated for work to any extent whatever, and that further payments of compensation to her should be suspended.

From the evidence it clearly appears that respondent is now partially incapacitated. The medical testimony and reports show that she has not completely recovered from her accident; that she can carry out certain types of secretarial work which do not require standing for long periods or walking long distances at her place of employment; and that she cannot perform the work which she was doing when she was injured. In such circumstances she would be en-

titled to receive the maximum compensation for partial incapacity until she recovers entirely, finds a position which she can fill, or until one is offered to her by petitioner or someone else. On this point the instant case bears a resemblance to the cases of *Marshall Spinning Corp. of R. I.* v. *Merola,* 78 R. I. 20, and *Atlas Tool & Findings Co.* v. *Duffy,* 81 R. I. 61, 98 A.2d 849.

In the case last cited we pointed out that an employee in a situation as here is under a duty to cooperate in good faith in an attempt to obtain work which the evidence shows she can do, and that she is not in a position to remain inactive. If she is not cooperative in the above respects she runs the risk of having her compensation suspended by the superior court at the employer's request or of having that court exercise its powers under public laws 1950, chapter 2628.

The respondent's appeal is sustained, the decree appealed from is reversed, and on March 1, 1954 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Higgins, Kingsley & Williamson, Donald A. Kingsley,* for petitioner.

*James M. Shannahan,* for respondent.